# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ELIZABETH B. WOODWARD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:11-CV-02859-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

Plaintiff Elizabeth B. Woodward (hereinafter "Ms. Woodward") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her application for Supplemental Security Income ("SSI").[1]  Ms. Woodward timely pursued and exhausted her administrative remedies available before the

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB").  However, separate, parallel statutes and regulations exist for SSI and DIB claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g),[2] § 205(g) of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Woodward was a 45 year old female at the time of her hearing before the administrative law judge (hereinafter "ALJ").  (Tr. 34).  She has a twelfth grade education. (Tr. 34, 185).  Her past vocational experience includes work as a cashier. (Tr. 31, 58, 181).  Ms. Woodward claims she became disabled on August 14, 1965. (Tr. 13, 187).  She complains of lupus, high blood pressure, asthma, anemia, depression, poor vision, and general pain and fatigue as a result of her lupus.  (Tr. 31, 32, 180, 195, 197, 199, 202, 241).  The ALJ found that Ms. Woodward has only worked for brief periods of time since her eighteenth birthday.  (Tr. 15).

Ms. Woodward protectively filed a Title XVI application for SSI on September 1, 2009.  (Tr. 13, 65).  The claim was denied by the Commissioner on January 4, 2010. (Tr. 13, 66).  Ms. Woodward filed a timely written request for a hearing on January 21, 2010.  (Tr. 13).  A video hearing was held on February 22, 2011, with Ms. Woodward appearing in Birmingham and the ALJ presiding from St. Louis, Missouri.  (Tr. 13, 27).  The ALJ concluded that Ms. Woodward was not disabled and

---

[2]  42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

denied her application for SSI on March 10, 2011.  (Tr. 13-21).

Ms. Woodward submitted a timely request for review of the ALJ's decision to the Appeals Council on March 23, 2011.  (Tr. 8).  The review was denied by the Appeals Council on June 16, 2011, and thus, the ALJ's decision became the Commissioner's final decision on that date.  (Tr. 1).

On August 15, 2011, Ms. Woodward initiated her federal lawsuit asking this court to review the ALJ's decision.  (Doc. 1).  On January 5, 2012, Ms. Woodward filed a brief (Doc. 10) in support of her appeal, and on February 26, 2012, the Commissioner answered with his responsive brief.  Ms. Woodward elected not to file a reply brief.  This court has carefully considered the record and for the reasons stated below, reverses the Commissioner's denial of benefits and remands the case for further development and consideration.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id*.  Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*.  Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as the

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through July 5, 2012.

"inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."   20 C.F.R. § 404.1505(a).   To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if

she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id*.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At the hearing, the ALJ found that Ms. Woodward had not engaged in any substantial gainful activity since September 1, 2009.  (Tr. 15).  Thus, Ms. Woodward satisfied step one of the five step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that Ms. Woodward's discoid lupus[4] was considered "severe" based on the requirements set forth in Regulations 20 C.F.R. §

---

[4] The online Merriam-Webster Medical Dictionary explains the term "lupus erythematosus" as:

> Either of two inflammatory autoimmune diseases, both more common in women. In the discoid type, a skin disease, red patches with grayish brown scales appear on the upper cheeks and nose (often in a butterfly pattern), scalp, lips, and/or inner cheeks. Sunlight worsens it. Antimalarial drugs may help. The second type, systemic (disseminated) lupus erythematosus (SLE), may affect any organ or structure, especially the skin (with marks like those of the discoid type), kidneys, heart, nervous system, serous (moisture-forming) membranes (e.g., in synovial joints or lining the abdomen), and lymph nodes, with acute episodes and remissions. Symptoms vary widely. Kidney and central-nervous-system involvement can be life-threatening. Treatment includes pain relief, control of inflammation, and trying to limit damage to vital organs.

http://www.merriam-webster.com/concise/lupus%20erythematosus (accessed on July 10, 2012) (emphasis added).

404.1520(c) and § 416.920(c).  *Id*.  The ALJ found several other conditions claimed by Ms. Woodward as non-severe, including hypertension, asthma, and depression. (Tr. 15-16).[5]  Nevertheless, because of her severe lupus, the ALJ concluded that Ms. Woodward satisfied the second step of the sequential disability evaluative process. § 404.1520 (c).

At step three, the ALJ determined that Ms. Woodward's medically determinable impairments, in combination, do not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security Regulations. (Tr. 16).  Ms. Woodward does not contest this determination on appeal.

The ALJ evaluated Ms. Woodward's residual functional capacity ("RFC") at step four. (Tr. 17).  The ALJ found Ms. Woodward had the RFC to "perform a range of light work as defined in 20 CFR 416.967 (b)."  *Id*.  More specifically, he formulated Ms. Woodward's RFC as:

> Specifically, she is able to lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently. She is able to stand/walk for about a total of six hours per day and able to sit for about a total of six hours. She is able to engage in occasional stooping, kneeling, crouching, and crawling. She is able to engage in no more than occasional climbing of ramps/stairs and balancing. She is unable to climb ladders/ropes/scaffolds. She must avoid concentrated exposure to temperature extremes and pulmonary irritants.  The claimant must avoid

---

[5]  Ms. Woodward specifically challenges the ALJ's severity findings regarding her impairments of depression and asthma.  (Doc. 9 at 7-9).

all exposure to hazards, such as moving machinery and unprotected heights. Due to sunlight sensitivity, the claimant is able to perform indoor jobs only.

(Tr. 17).

The vocational expert (hereinafter "VE") testified that Ms. Woodward had typically performed her past cashier work as semi-skilled and at the medium level, but that the position is actually "classified as light exertion work." (Tr. 19, 58). The ALJ determined that Ms. Woodward could perform her specific past relevant job as a cashier, "as the work is generally performed." (Tr. 19).

The ALJ then alternatively proceeded to the fifth step of the sequential evaluation process in which he posed three separate hypothetical questions to the VE. In reliance upon Ms. Woodward's testimony, her medical records, and the testimony of the VE, the ALJ found that Ms. Woodward was not disabled through the date of his decision. (Tr. 18-21). Further, the ALJ found that Ms. Woodward was not eligible for SSI payments under § 1614(a)(3)(A) of the Social Security Act. (Tr. 21).

## <u>ANALYSIS</u>

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672

F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6]

In this appeal, Ms. Woodward generally challenges whether substantial evidence supports the Commissioner's denial of her SSI application. The court has carefully reviewed the record and finds that this case should be remanded for further development as it pertains to the ALJ's RFC formulation for Ms. Woodward.[7] The court also finds that the ALJ committed reversible error in his alternative ruling with respect to his reliance upon certain non-comprehensive hypothetical questions that he posed to the VE.[8] The court addresses each one of these areas more fully below.

## I.   THE ALJ'S DISABILITY DETERMINATION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

While Ms. Woodward has the burden of proving her disability, the ALJ has a basic obligation to develop a full and fair record. *See Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir.

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[7] The undersigned has rendered several other comparable decisions which have reversed the Commissioner due to an underdeveloped record and/or an inadequately supported residual functional capacity ("RFC") determination from which the framework, analysis, and disposition of this case persuasively flow. *See, e.g., Stewart v. Astrue*, No. 5:11-CV-2103-VEH, (Docs. 10, 11) (N.D. Ala. May 14, 2011); *Rose v. Astrue*, No. 1:11-CV-01186-VEH (Docs. 10, 11) (N.D. Ala. Nov. 1, 2011); *Meherg v. Astrue*, No. 6:11-CV-01387-VEH (Docs. 11, 12) (N.D. Ala. Feb. 23, 2012).

[8] As a result, the court does not reach the merits of the other issues presented on appeal.

9

1979)).  When the ALJ has neglected to develop a full and fair record, the court "has required the Secretary to reopen the case 'until the evidence is sufficiently clear to make a fair determination as to whether the claimant is disabled or not.'"  *Thorne*, 607 F.2d at 220 (quoting *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974)).

In support of his RFC finding for Ms. Woodward, the ALJ did not identify a medical source opinion[9] or a physical capacities evaluation conducted by a physician that substantiates Ms. Woodward's ability to perform a reduced range of light work given her severe impairment of discoid lupus and her non-severe conditions of asthma, depression, and hypertension.[10]

Such an omission from the record is significant to the substantial evidence

---

[9] Medical source statements are "medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.  Medical source statements are to be based on the medical sources' records and examination of the individual; *i.e.*, their personal knowledge of the individual. Therefore, because there will frequently be medical and other evidence in the case record that will not be known to a particular medical source, a medical source statement may provide an incomplete picture of the individual's abilities." SSR 96-5p.

[10] *See Jamison v. Bowen*, 14 F.2d 585, 588 (11th Cir. 1987) ("At step three the ALJ must determine if the applicant has a severe impairment or a combination of impairments, <u>whether severe or not</u>, that qualify as a disability.") (emphasis added); *id.* (" The ALJ must consider the applicant's medical condition taken as a whole."); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

inquiry pertaining to the ALJ's RFC determination. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

This court has recognized the Eleventh Circuit's view that "the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work." *Clemmons v. Astrue*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. Jun. 11, 2007) (discussing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.* This court has similarly noted, "where the treating physician has not discharged the patient from treatment and the physician has not made, and was not asked to make, a determination regarding plaintiff's functional capabilities, there is no substantial evidence to support an ALJ's functional capacity finding." *Clemmons*, (Doc. 22 at 11) (citing *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001)).

The court acknowledges that the ALJ did refer in his opinion to a host of medical records pertaining to Ms. Woodward. (*See, e.g.*, Tr. 18 (citing to Exhibits 1F, 4F, 6F, and 9F)). However, these referenced documents merely report raw clinical findings related to Ms. Woodward's individual conditions. (*See, e.g.*, Tr.195-289 (medical records from Sulaf J. Mansur, M.D. and M. Huynh M.D.); Tr. 231-35

(consultative examination report from David Brower, M.D.); Tr. 245-252 (additional medical records from Sulaf J. Mansur, M.D. and M. Huynh M.D.); Tr. 263-273 (medical records from Cooper Green Mercy Hospital)).[11]

For example the consultative physician, Dr. Brower, simply examined Ms. Woodward, reported a host of physical findings (Tr. 232-34), and confirmed her diagnosis of discoid lupus.  (Tr. 234).  Moreover, none of the doctors provided any assessment of Ms. Woodward's discoid lupus and her non-severe hypertension, depression, and asthma in vocational terms.  *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined, without the benefit of a physical capacities evaluation conducted by a physician, that the claimant was not disabled:

> While the Record contains Ms. Rogers'[s] medical treatment history, it lacks any physical capacities evaluation by a physician. The

---

[11] The ALJ also relied upon the "Psychiatric Review Technique" (Tr. 217-230) (Exhibit 3F) generated by Robert Estock, M.D., on January 4, 2010, to support his decision.  (Tr. 19).  However, that opinion is limited to characterizing Ms. Woodward's affective disorder as non-severe and has nothing to do with the vocational limitations caused by her severe discoid lupus or its functionally-related impact when combined with her diagnoses of minimal depression, hypertension, and asthma.

ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.* In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations. Further, Ms. Rogers' [s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers'[s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." (emphasis added) (citing *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir.1991))); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." (emphasis added) (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 893 F.2d 401, 403 (1st Cir.1989))); *cf. Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir. 1973) ("To meet such a *prima facie* case it

is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to the claimant's residual capacities in the field of employment.") (emphasis added).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Ms. Woodward's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in her medical records. Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on Ms. Woodward by a physician that corroborates the ALJ's determination that she is capable of performing a reduced range of light work despite her severe impairment of discoid lupus and her non-severe depression, hypertension, and asthma, the record has not been adequately developed. *See, e.g., Cowart*, 662 F.2d at 732 (citing *Thorne*, 607 F.2d at 219); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history."). Similarly, in light of the foregoing analysis, the ALJ's disability decision is not supported by substantial evidence, and remand is appropriate.

II.   **THE ALJ POSED SEVERAL INCOMPLETE HYPOTHETICAL QUESTIONS TO THE VE AND ERRONEOUSLY RELIED UPON ONLY THOSE ANSWERS TO SUPPORT HIS DISABILITY DETERMINATION.**

Alternatively, the ALJ's disability determination is flawed in his reliance upon expert testimony because of the incomplete questions that he presented to the VE. The ALJ posed three separate hypothetical questions to the VE.   The first hypothetical question was:

> [L]et's assume we have a hypothetical person who's able to lift, carry, push, pull up to 20 pounds occasionally and 10 pounds frequently; she's able to stand and walk for about a total of six hours per day and sit for about a total of six hours; she is able to engage in occasional stooping, kneeling, crouching, and crawling; she is able to occasionally climb stairs and ramps.   She is able to balance no more than occasionally.   She is unable to climb ladders, ropes, or scaffolds.   This hypothetical person must avoid concentrated exposure to temperature extremes and pulmonary irritants. She must avoid all exposure to workplace hazards such as dangerous moving machinery and unprotected heights.   She should avoid or seriously limit sun exposure; therefore, should best work in indoor environments that do not subject her to a lot of direct sunlight.

(Tr. 58-59).

In response to the first question, the VE testified that the hypothetical person would be able to perform Ms. Woodward's past work as a cashier as it is generally described "in the DOT."[12]   (Tr. 59).   The VE further indicated that within the State

_____

[12]   The Dictionary of Occupational Titles provides different examples of work activities that fall within the residual functioning capacity for medium work.   (Washington, D.C.: U.S. Dept. of

of Alabama there were 17,000 light, unskilled cashier positions as well as 1,700 ticket seller slots and 2,000 product assembly and machine feeder jobs, which this hypothetical worker could perform. *Id*.

The ALJ did not list any of Ms. Woodward's impairments when asking this question. Even assuming that Ms. Woodward's asthma was indirectly included based on the ALJ's indication that the hypothetical person should stay away from pulmonary irritants, as well as her lupus, in that the hypothetical person should limit sun exposure, the ALJ still did not reference, either directly or indirectly, her depression or any pain.

The second hypothetical was, "[A]ll the limitations apply except this time the person can do no more than sedentary work, meaning they can lift up to 10 pounds on occasion, they can stand and walk for up to a total of two hours, and they can sit for at least six hours in a workday." (Tr. 59). In response to the second question, the VE provided examples of jobs this person could do, such as assembly line work, certain cashier positions, and machine feeder and offbearer vocations. (Tr. 60). Again, the ALJ did not reference Ms. Woodward's impairment of non-severe depression or her subjective pain.

---

Labor, Employment and Training Administration: U.S. G.P.O., 1993). Available online at: http://www.occupationalinfo.org.

16

The third and final hypothetical question proposed by the ALJ was, "[D]ue to chronic pain and other symptoms, this hypothetical person would be expected to miss work at least twice a month." (Tr. 61). This time, the ALJ included Ms. Woodward's depression and chronic pain, which she testified was normally "like a 7 and an 8." (Tr. 43). In response to this hypothetical, the VE testified that this person "would likely be terminated. That is running into excessive absenteeism." (Tr. 61).

In order for the vocational expert testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which contains all of the claimant's impairments. *Cf. Vega v. Comm. of Soc. Sec.*, 265 F.3d 1214, 1220 (11th Cir. 1996) ("Upon remand, the ALJ should pose a more thorough hypothetical question, including Vega's subjective complaints and her symptoms of CFS."). In finding that Ms. Woodward was not disabled, the ALJ necessarily relied on the VE's answers to the first and second hypothetical situations. However, neither one of these questions factored in Ms. Woodward's impairment of depression or any level of pain. Instead, the only hypothetical that even mentioned these conditions was the final one, which the ALJ clearly disregarded.

As the pre-*Bonner* Fifth Circuit has explained:

There followed three similar hypothetical questions, assuming other physical limitations on the part of the claimant. But none of these interrogatories ever required the vocational expert to assume the

<u>claimant had any psychological impairments</u>.

The conclusion of the Magistrate on this issue, which was accepted by the District Court, was that

> the medical records submitted to the vocational expert make ample reference to the psychological aspects of Plaintiff's physical impairment. Under such circumstances the Secretary has discharged his burden of demonstrating that the Plaintiff was capable of engaging in substantial gainful activity.

<u>We do not think it is proper to assume that because the vocational expert was aware of Brenem's psychological problems, that he took them into consideration in answering hypothetical questions which referred only to physical impairments</u>.  Or at least we have no basis for assuming that had these factors been included in the hypothetical questions his answer would have been the same.

The same issue was recently addressed by this Court in *Johnson*, *supra*.  <u>There we considered an hypothetical question posed to a vocational expert who was instructed to "disregard" completely any mental or physical impairment which the claimant may have or be found to have</u>.  *Id.* at 998. We held that unless there was vocational expert testimony concerning the availability of jobs for a person with the claimant's educational level, work skills and experience and physical limitations, the decision of the ALJ, based significantly on the expert testimony, would be unsupported by substantial evidence.

<u>The same rule applies here with respect to Brenem's psychological impairments</u>.  The ALJ found that they did exist, and it is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment. *See, e.g., Broussard v. Gardner*, 382 F.2d 278 (5th Cir. 1967); *Dodsworth v. Celebrezze*, 349 F.2d 312 (5th Cir. 1965).  It cannot be said that the ALJ fully considered all aspects of Brenem's disability when there is no evidence in the record as to the type of work available

> to a person with "a spondylolysis of the lumbosacral spine <u>and either a</u>
> <u>mild hysterical conversion neurosis or a mild compensation neurosis</u>
> <u>with some mild anxiety and depression</u>."

*Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (emphasis added).  Ultimately,

the Eleventh Circuit remanded the *Brenem* case for further development "relating to

availability of employment for Brenem, assuming the physical <u>and psychological</u>

<u>limitations</u> which he has been found to have."  *Id.* (emphasis added).

 In the instant case, the ALJ found that Ms. Woodward's depression was "non-

severe."  (Tr. 15).  In the areas of activities of daily living, social functioning, and

concentration, persistence, and pace, the ALJ found that she had "no more than 'mild'

limitation."  (Tr. 16).  However, consistent with *Brenen*, it is still critical for the ALJ

to include Ms. Woodward's depression in his hypothetical question to the VE, even

if it is "mild," in order for the ALJ's reliance upon the expert testimony to be

appropriate.

 Similarly, the answers provided by the VE that the ALJ used to support his

disability determination did not incorporate any amount of Ms. Woodward's

subjective pain.  Regarding her pain, although the ALJ did discount the level of

severity she claimed; however, at the same time, he acknowledged that Ms.

Woodward "has genuine symptoms."  (Tr. 19).  Under such circumstances, to

constitute substantial evidence the hypothetical questions upon which the ALJ relied

to support his disability determination should have factored in some degree of pain. Therefore, in accord with the above analysis, the ALJ did not pose a comprehensive hypothetical question to the VE, and remand is appropriate for this separate reason.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 18th day of July, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

20